UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kenneth L. Edwards, | ) C/A No. 2:11-3518-SB-BM |
| | ) |
| Plaintiff, | ) |
| | ) **Report and Recommendation** |
| vs. | ) |
| | ) |
| State of Washington; | ) |
| David Stillman, *Director of (DCS) Division of Child Support*; | ) |
| South Carolina Department of Social Services; | ) |
| Child Support Enforcement Special Collections Unit; | ) |
| Margaret C. Watford, *Individually and as Assistant Project Manager*; | ) |
| Patricia N. Conlon, *Clerk of Court Kalamazoo County, 9th Judicial Circuit*; | ) |
| State of Michigan; | ) |
| Carmento M. Floyd, *aka* Carmento M. Edwards, *Individually and as Assignor of the Defendants*; | ) |
| Elson Floyd, *Individually and as a Co-conspirator*; | ) |
| John M. Magera, *Individually and as an employee of South Carolina Department of Social Services*; | ) |
| Paul F. LeBarron, *Individually and as an employee of the South Carolina Department of Social Services*; | ) |
| Lillian B. Koller, *Director of the South Carolina Department of Social Services*; | ) |
| Julie J. Armstrong, *Clerk of Court Charleston County Family Court Division*, | ) |
| | ) |
| Defendants. | ) |

## *Background of this Case*

The *pro se* Plaintiff is a resident of Hollywood, South Carolina. This federal civil action is based on state court litigation concerning an arrearage in Plaintiff's court-ordered support. Plaintiff has brought suit against the State of Washington, its Director of Child Support,



the South Carolina Department of Social Services and its Child Support Enforcement Special Collections Unit, an Assistant Project Manager for the South Carolina Department of Social Services, the Clerk of Court for Kalamazoo County in Michigan, the State of Michigan, Plaintiff's former spouse, the current husband of Plaintiff's former spouse, three employees of the South Carolina Department of Social Services, and the Clerk of Court for Charleston County.  Plaintiff has paid the full filing fee of Three Hundred Fifty ($350) Dollars in this case.  *See* Receipt No. SCX200009159 (D.S.C. Dec. 28, 2011).

Plaintiff raises various causes of action, which are: (1) failure to apply 28 U.S.C. § 1738B; (2) misrepresentation, fraud, and deceit; (3) violation of due process and equal protection rights; (4) violation of 42 U.S.C. § 1983; and (5) violation of 42 U.S.C. § 1985(3).  Plaintiff seeks compensatory damages of seven million dollars, punitive damages of twenty-one million dollars, a "Declaration" (declaratory judgment) that "denial, refusal, and failure of an Accurate Accounting (administrative Review) to Plaintiff" violated his constitutional rights, and "such other" relief deemed just and proper by this Court.

## *Discussion*

Under established local procedure in this judicial district, a careful review has been made of the *pro se* pleadings in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995)(*en banc*); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979)



(recognizing the district court's authority to conduct an initial screening of any *pro se* filing);[1] *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); and *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Further, as Plaintiff is a *pro se* litigant, his pleadings are accorded liberal construction. *See Erickson v. Pardus*, 551 U.S. 89 (2007)(*per curiam*); *Hughes v. Rowe*, 449 U.S. 5, 9-10 & n. 7 (1980)(*per curiam*); *Cruz v. Beto*, 405 U.S. 319 (1972); *Fine v. City of New York*, 529 F.2d 70, 74 (2nd Cir. 1975).

Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). A plaintiff, even a *pro se* one, must plead factual content that allows the court to draw the reasonable inference that a named defendant is plausibly liable, not merely possibly liable. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Here, after careful review and consideration of the Complaint, the undersigned does not find that Plaintiff has set forth allegations sufficient to state a cognizable claim.

Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statue." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Further, since federal courts have limited subject matter jurisdiction, there is no presumption that the court has jurisdiction. *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (*citing Lehigh Mining & Mfg. Co. v. Kelly*, 160 U.S. 327, 337 (1895)). Accordingly, a federal court is required, *sua sponte*, to determine

---

[1] *Boyce* has been held by some authorities to have been abrogated in part, on other grounds, by *Neitzke v. Williams*, 490 U.S. 319 (1989) (insofar as *Neitzke* establishes that a complaint that fails to state a claim, under Federal Rule of Civil Procedure 12(b)(6), does not by definition merit *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) [formerly 28 U.S.C. § 1915(d)], as "frivolous").



if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears." *Bulldog Trucking*, 147 F.3d at 352. Additionally, although the absence of subject matter jurisdiction may be raised at any time during the case, determining jurisdiction at the outset of the litigation is the most efficient procedure. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

Generally, a case can be originally filed in a federal district court only if there is diversity of citizenship under 28 U.S.C. § 1332 or if there is so-called "federal question" jurisdiction under 28 U.S.C. § 1331, and "[t]he facts providing the court jurisdiction must be affirmatively alleged in the complaint." *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988) (*citing McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936)). To this end, Federal Rule of Civil Procedure 8(a)(1) requires that the complaint provide "a short plain statement of the grounds upon which the court's jurisdiction depends[,]" although even if the complaint does not contain "an affirmative pleading of a jurisdictional basis, the federal court may [still] find that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded." *Pinkley, Inc.,* 191 F.3d at 399 (*citing* 2 *Moore's Federal Practice* § 8.03[3] (3rd edition 1997)). Here, however, no basis for jurisdiction in this Court is set forth in the allegations of the Complaint.

First, this federal court does not have jurisdiction to review the various decisions issued by state courts in South Carolina, North Carolina, Michigan, and Washington (State) regarding Plaintiff's child support. Longstanding precedents preclude the United States District Court for the District of South Carolina from reviewing the findings or rulings made by state courts, including decisions of a state court having jurisdiction over domestic relations matters. Appeals of orders issued by lower state courts must go to a higher state court, with only *the Supreme Court of the United States* being able to review a decision of a state court in a direct appeal. 28 U.S.C.

4



§ 1257. *See also* 28 U.S.C. § 1738 (federal court must accord full faith and credit to state court judgment); 28 U.S.C. 1738A (full faith and credit for child custody orders by state courts); and 28 U.S.C. 1738B (full faith and credit for child support orders issued by state courts).[2] *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983), where the Supreme Court of the United States held that a federal district court lacks authority to review final determinations of state or local courts because such review can only be conducted by the Supreme Court of the United States under 28 U.S.C. § 1257. *See also Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). This prohibition on review of state court proceedings or judgments by federal district courts is commonly referred to as the *Rooker-Feldman* doctrine or the *Feldman-Rooker* doctrine, and applies even when a challenge to a state court decision concerns a federal constitutional issue. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. at 484-86. The principle of the *Rooker-Feldman* doctrine was reaffirmed in *Exxon Mobil Corp. v. Saudi Basic Industries Corp*., 544 U.S. 280 (2005) (Rooker-Feldman doctrine applies when the loser in a state court suit files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself).[3] *See also Davani v. Virginia Dept. of Transp*., 434 F.3d 712 (4th Cir. 2006). Further, the Rooker-Feldman doctrine applies even if the state court litigation has not reached a State's highest court. *Worldwide Church of God v. McNair*, 805 F.2d 888, 893 & nn. 3-4 (9th Cir. 1986).

There is also no basis for diversity jurisdiction in this case to consider Plaintiff's claims for misrepresentation, fraud and deceit arising under South Carolina law or the laws of

---

[2] Plaintiff's first cause of action is purportedly under § 1738B.

[3] According to the Complaint, Plaintiff is contesting the application of several decisions from different states, which he apparently believes are at cross-purposes. Plaintiff also apparently has a pending state case in South Carolina relating to his claims. Complaint, at ¶ ¶ 12, 16-17, 36, 39, 44.



another State. The diversity statute, 28 U.S.C. § 1332(a), requires complete diversity of parties and an amount in controversy in excess of seventy-five thousand dollars ($75,000.00). Complete diversity of parties in a case means that no party on one side may be a citizen of the same State as any party on the other side. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 372-74 (1978). Complete diversity of parties is absent in this case because Plaintiff and four of the individual Defendants are citizens of South Carolina. *See* 28 U.S.C. 1332; and *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). Further, even if complete diversity of parties were present in this case, the domestic relations exception to the diversity statute would preclude this Court from addressing the child support issues in the above-captioned case. *See Wasserman v. Wasserman*, 671 F.2d 832, 834 (4th Cir. 1982); *Wilkins v. Rogers*, 581 F.2d 399, 403-405 & n. 4 (4th Cir. 1978); and *Thrower v. Cox*, 425 F. Supp. 570, 571-574 (D.S.C. 1976). Federal appellate courts have also held that federal district courts "may abstain for reasons of comity and common sense from cases better handled by state courts having authority over matrimonial and family matters." *Gonzalez Canevero v. Rexach*, 793 F.2d 417, 418 (1st Cir. 1986). *Cf. Kelser v. Anne Arundel County Department of Social Services*, 679 F.2d 1092, 1094-95 (4th Cir. 1982).

With respect to any federal claims being asserted, it is well settled that attorneys representing governmental entities in civil matters are entitled to prosecutorial immunity for actions taken in connection with their representation. For example, the doctrine of absolute immunity from lawsuits seeking damages has also been recognized as applicable to claims of constitutional violations arising from legal representation by defense counsel for United States agencies, officials, or employees in *Bivens* cases or for state agencies or officials in civil rights cases. *See, e.g., Murphy v. Morris*, 849 F.2d 1101 (8th Cir. 1988) (state assistant attorney general entitled to absolute

6



immunity from suit); *Bryan v. Murphy*, 243 F. Supp. 2d 1375, 1380-81 (N.D. Ga. 2003) (collecting cases); and *Moore v. Schlesinger,* 150 F. Supp. 2d 1308, 1313-14 (M.D. Fla. 2001). Here, the holding in *Murphy v. Morris* is applicable to the representation by defendant Magera for the South Carolina Department of Social Services and attorneys in the other States who have handled litigation relating to Plaintiff's child support matter:

> We believe that the analysis set forth in *Butz* [*Butz v. Economou*, 438 U.S. 478 (1978)] and *Briscoe* [*Briscoe v. LaHue*, 460 U.S. 325 (1983)] is of equal applicability to the advocacy functions of a state assistant attorney general defending state officials in prisoner civil rights litigation. The traditional requirements for extending absolute immunity are satisfied by a government attorney defending such an action. *See Mitchell* [*Mitchell v. Forsyth*, 472 U.S. 511 (1985)], 472 U.S. at 521-22, 105 S.Ct. at 2812-2813. First, there exists a firm common law and historical basis for the extension of immunity to trial counsel. *Butz*, 438 U.S. at 509, 98 S.Ct. at 2912; *Yaselli v. Goff*, 12 F.2d 396, 402 (2d Cir.1926), *aff'd*, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927). Second, the performance of advocacy functions by an assistant attorney general creates a great potential for entanglement in vexatious litigation. Especially in prisoner litigation, unsuccessful plaintiffs may seek recourse against the attorney for the state because of activities which the litigant finds disturbing. Assistant attorney generals should not be inhibited in the performance of their duties, or in their choice of litigation strategies, by the threat of harassing lawsuits. And, abuses by counsel may be remedied through contempt or professional disciplinary proceedings.
>
> We are convinced that the regular advocacy functions of an assistant attorney general, in defense of civil rights litigation, are worthy of the protections afforded by absolute immunity. Without such protection, state attorneys will be unable to perform their integral function in the judicial process without fear of harassment or intimidation. *See Butz*, 438 U.S. at 512, 98 S.Ct. at 2913. We therefore follow the lead of the Second Circuit, and hold that a state assistant attorney general's function as a government advocate entitles him or her to absolute immunity from suit for damages. *See Barrett v. United States*, 798 F.2d 565, 571-73 (2d Cir.1986).

*Murphy v. Morris*, 849 F.2d at 1105.



The State of South Carolina, the South Carolina Department of Social Services with its Child Support Enforcement Special Collections Division, the State of Michigan, and the State of Washington all have Eleventh Amendment immunity with respect to the claims brought by Plaintiff. *See, e.g., Federal Maritime Commission v. South Carolina State Ports Authority*, 535 U.S. 743 (2002); *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001); *Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000); *Alden v. Maine*, 527 U.S. 706 (1999); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) (although express language of Eleventh Amendment only forbids suits by citizens of other States against a State, Eleventh Amendment bars suits against a State filed by its own citizens); *Virginia v. Reinhard*, 568 F.3d 110 (4th Cir. 2009); *Belcher v. South Carolina Board of Corrections*, 460 F. Supp. 805, 808-809 (D.S.C. 1978); and *Simmons v. South Carolina State Highway Dept.*, 195 F. Supp. 516, 517 (E.D.S.C. 1961).

Additionally, the two Clerks of Court (Conlon and Armstrong) are immune from suit because of quasi judicial immunity. *See Cook v. Smith,* 812 F. Supp. 561, 562 (E.D. Pa. 1993); *see also Dieu v. Norton*, 411 F.2d 761, 763 (7th Cir. 1969) ("Defendants Circuit Judge Cotton, court reporter Tellschow and circuit court clerk Block were all acting in the discharge of their official responsibilities[;] [a]s such they were protected by the traditional doctrine of judicial immunity, as this rule of law was not abolished by § 1983, *supra*."); *Forrester v. White*, 484 U.S. 219, 226-27 (1988). *See also Abebe v. Propes*, Civil Action No. 0:11-1215-MBS-PJG, 2011 WL 2581385 (D.S.C. June 3, 2011) (collecting cases), *adopted*, 2011 WL 2600593 (D.S.C. June 29, 2011). The doctrine of absolute quasi judicial immunity has been adopted and made applicable to court support personnel because of "the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other

8



judicial adjuncts[.]'"  *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992), *quoting Scruggs v. Moellering*, 870 F.2d 376, 377 (7th Cir. 1989).  *See also Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980) (collecting cases on immunity of court support personnel); *Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995).

The Defendant child support officials also cannot be held liable for performing duties required by court orders.  *Mayes v. Wheaton*, No. 97 C 8072, 1999 WL 1000510 (N.D. Ill. Nov. 1, 1999) ("Judicial immunity extends to all persons performing judicial and quasi-judicial functions, as well as those acting under the orders, or at the discretion, of a judicial officer."), *citing Forrester v. White*, 484 U.S. at 226-27.   In *Mourat v Common Pleas Court of Lehigh County*, 515 F. Supp. 1074 (E.D.Pa. 1981), the district court, in a bench ruling, rejected claims similar to those raised by the *pro se* Plaintiff in the case *sub judice*:

> In the "recognized immunity enjoyed by judicial and quasi-judicial officers, including prothonataries, there exists an equally well-grounded principle that any public official acting pursuant to court order is also immune."  We have here quoted from *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969), [*cert. denied*, 396 U.S. 941 (1969)].  If he failed to act in accordance with the judicial mandate or court rule, he would place himself in contempt of court.  *See Zimmerman v. Spears*, 428 F. Supp. 759, 752 (W.D.Tex.), *aff'd*, 565 F.2d 310 (5th Cir. 1977); *Davis v. Quarter Sessions Court*, 361 F. Supp. 720, 722 (E.D.Pa. 1973); *Ginsburg v. Stern*, 125 F.Supp. 596 (W.D.Pa. 1954), *aff'd per curiam on other grounds*, 225 F.2d 245 (3d Cir. 1955) sitting en banc.

515 F. Supp. at 1076.

Nor are Plaintiff's generalized allegations of conspiracy against these Defendants sufficient to show action in violation of a constitutional right under § 1983 or § 1985.  *Cf. Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]; *House v. New Castle County*, 824 F.Supp. 477, 485 (D.Md. 1993)[Plaintiff's



conclusory allegations insufficient to maintain claim]; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-1950 (2009)["[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"].  Additionally, the Supreme Court has held that in order to maintain a claim under § 1985(3), a Plaintiff must show that the alleged conspiracy was motivated by "some racial, or perhaps otherwise class-based invidiously discriminatory animus." *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971); *see also Trerice v. Summons*, 755 F.2d 1081, 1084 (4th Cir. 1985).  However, Plaintiff has alleged a racial basis for his claims of conspiracy in only a general and conclusory fashion with no supporting factual assertions.  *See Complaint*, ¶ 60.  Therefore, even if liberally construed as a conspiracy action brought pursuant to §1985(3), the instant case is still subject to summary dismissal.  *Cf. Johnson v. Flores*, No. 05-1628, 2009 WL 606263, at * 6 (N.D.Cal. March 9, 2009).

Plaintiff former spouse, Carmento M. Floyd, has not acted under color of state law.  In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: *(1)* the defendant deprived him or her of a federal right, and *(2)* did so under color of state law.  *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999); and *Hall v. Quillen*, 631 F.2d 1154, 1155-56 & nn. 2-3 (4th Cir. 1980); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982) ("Careful adherence to the 'state action' requirement . . . also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.").  Purely private conduct, no matter how wrongful, injurious, fraudulent, or discriminatory, is not actionable under 42 U.S.C. § 1983 or under the Fourteenth



Amendment. *See Lugar v. Edmondson Oil Co.*, 457 U.S. at 936; and *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 721 (1961).[4]

Although a private individual or corporation can act under color of state law, his, her, or its actions must occur where the private individual or corporation is a willful participant in joint action with the State or with an agent of the State. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). Whether a private individual's action or corporation's action rises to the level of state action necessarily depends on the relationship between the activity and the State. The inquiry involves "whether there is a sufficiently close nexus between the State and the challenged action . . . so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). In *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982), the Supreme Court held that a state is responsible for private action only when it has exercised "coercive power" or has provided "significant encouragement" in the implementation of the action. However, it is also well settled that "a private person does not act under color of state law simply because he invokes state authority;" *Brummett v. Camble*, 946 F.2d 1178, 1184 (5th Cir. 1991), which is cited in *Anderson v. Posey*, Civil Action No. 2:10-3180-TLW-RSC, 2010 WL 6562897 (D.S.C. Dec. 23, 2010), *adopted*, 2011 WL 1595265 (D.S.C. April 27, 2011); and Carmento Floyd's participation in state court child support proceedings does not make her a "state actor" for purposes of a § 1983 action.

---

[4]*Burton* involved the Equal Protection Clause of the Fourteenth Amendment, not 42 U.S.C. § 1983. Federal courts have uniformly held that conduct which constitutes state action under the Fourteenth Amendment also constitutes action under color of state law, insofar as suits under 42 U.S.C. § 1983 are concerned. *West v. Atkins*, 487 U.S. 42, 48-49 (1988) (collecting cases).



Elson Floyd, the spouse of Carmento Floyd, is, according to Plaintiff, the President of Washington State University. While in exercising his duties as President of Washington State University, Elson Floyd would be acting under color of state law; *West v. Atkins*, 487 U.S. 42, 50 (1988) ("Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."); Elson Floyd has not acted under color of state law with respect to his spouse's child support litigation.

Finally, based on the aforementioned cases, this case would ordinarily be subject to summary dismissal under 28 U.S.C. § 1915. The provisions of the 28 U.S.C. § 1915, however, do not apply in cases where the filing fee has been paid, as the statute refers to cases proceeding *in forma pauperis*. *See Farese v. Scherer*, 342 F.3d 1223, 1227-29 (11th Cir. 2003); and *Key v. United States Department of Transportation, et al.*, Civil Action No. 2:01-3076-DCN (Entry No. 10 [expressing the view that pretrial dismissal procedures of the PLRA/AEDPA are not available in non-prisoner/non-IFP cases]). Even so, payment of the full filing fee does not cure the fact that Plaintiff's claims are barred under the *Rooker-Feldman* doctrine and otherwise fail to state a cognizable claim. *See Conner v. Greef*, No. 03-5986, 99 Fed.Appx. 577, 580, 2004 WL 898866 (6th Cir. April 26, 2004) (even where filing fee has been paid, district court may dismiss a complaint *sua sponte* where it is "totally implausible, attenuated, unsubstantiated, frivolous, devoid of merit, or no longer open to discussion"), *citing Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999), and *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974); *see also Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-364 (2d Cir. 2000)["District courts . . . are . . . capable of determining when an action is frivolous . . . [and] . . . may dismiss a frivolous complaint *sua sponte* even when the Plaintiff has paid the required filing fee . . . Indeed, as courts of first instance, district courts are

12



especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources."]; *cf. Clark v. United States*, 74 Fed.Appx. 561, 2003 WL 22025055 (6th Cir. (Mich.).

### *Recommendation*

Accordingly, it is recommended that the Court summarily dismiss the above-captioned case *without prejudice*. *Fitzgerald*, 221 F.3d at 363-64.

Plaintiff's attention is directed to the important Notice on the next page.

_____
Bristow Marchant
United States Magistrate Judge

January 5, 2012
Charleston, South Carolina



13

**Notice of Right to File Objections to Report and Recommendation**

Plaintiff is advised that he may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Larry W. Propes, Clerk of Court**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



14